19·MJ·2209·MBB

## AFFIDAVIT

I, Jason Abramoski, being duly sworn, do hereby state as follows:

1. I am a trooper with the Massachusetts State Police (MSP). I became a trooper with MSP in October 2011. Currently, I am assigned to the Massachusetts State Police Division of Homeland Security and Preparedness – Commonwealth Interstate Narcotics Enforcement Reduction Team ("C.I.N.R.E.T"), where my duties are to investigate narcotics distribution cases. I previously worked as a homicide and narcotics investigator for the MSP unit assigned to the Plymouth County District Attorney's Office.

2. In addition to my work as a Trooper with MSP, I am a Task Force Officer ("TFO") with the Department of Homeland Security, Homeland Security Investigations ("HSI"). Since September 2018, I have been assigned to the Organized Crime Drug Enforcement Task Force, New England Strike Force, a multi-agency task force whose mission is to identify, investigate, disrupt, and dismantle large-scale, violent drug trafficking organizations operating in the District of Massachusetts and elsewhere.

3. Through my work with HSI and MSP, I am familiar with the manner and means commonly employed by drug traffickers, including those employed to avoid detection by law enforcement. I am also familiar with the terminology and slang commonly employed by drug traffickers. In my training and experience, I have observed and examined fentanyl, heroin, cocaine, cocaine base ("crack"), marijuana, methamphetamine, oxycodone, and other controlled substances. I am aware of the prices commonly charged on the street for these substances, the method of packaging, and the jargon used in their trade. During my law enforcement career, I have received specialized training regarding the activities of narcotics traffickers, including the methods used to package, store, and

distribute narcotics, and the methods used by narcotics traffickers to conceal and launder the proceeds of their narcotics trafficking activities.

4. I submit this affidavit for two reasons. First, I submit this affidavit in support of an application for a criminal complaint charging that from in or about October 2018 to the present, in Boston and elsewhere in the District of Massachusetts, LUIS ALFREDO BAEZ, a/k/a "Alexis Rivera," a/k/a "Eduardo Vasquez," a/k/a "Ariel Maldonado," LUIS MEJIA GUERRERO, and CESAR RODRIGUEZ-SANQUENTIN (collectively, the "Targets") conspired to distribute and possess with intent to distribute cocaine, a Schedule II controlled substance, in violation of Title 21, United States Code, Section 846. This affidavit does not set forth all the facts developed during the course of this investigation. Rather, it sets forth only those facts that are necessary to establish probable cause to believe that the Targets committed the offense set forth in the accompanying criminal complaint.

5. Second, I submit this affidavit in support of the government's motion that the Targets be detained pending trial. Based on the information set out below, the Targets represent a danger to the community or pose a significant risk of flight (or both).

THE BAEZ DRUG CELL

6. I am the co-case agent on an investigation by HSI, the Drug Enforcement Administration ("DEA"), MSP, and other law enforcement agencies targeting drug trafficking cells operating in and around Boston, Massachusetts. Late last year, agents began to identify members of a Boston-based drug trafficking cell operating in the Bowdoin Street – Geneva Avenue section of Boston. Agents identified BAEZ as a long-time drug trafficker and leader of the cell. Agents used a variety of techniques to investigate BAEZ and his associates: they conducted surveillance, either themselves or through the use of

stationary pole cameras; they analyzed telephone records; they obtained search warrants for precise location information from cellular telephones; they obtained search warrants to place global positioning system ("GPS") devices on vehicles; and they received authorization to intercept wire communications from cellular telephones utilized by BAEZ and GUERRERO.

7. Agents determined that BAEZ regularly drove a blue Honda Odyssey minivan and identified the woman who was the registered owner of the Odyssey. On the birth certificate for one of the registered owner's children, BAEZ was listed as the father. The registered owner also listed BAEZ as an emergency contact on her passport application. Agents obtained a photograph from a Dominican identification card for BAEZ and searched Massachusetts law enforcement and Registry of Motor Vehicle (RMV) databases for photographs that matched BAEZ's. Based on that search, agents located a Massachusetts driver's license bearing a photograph of BAEZ under the alias "Alexis Rivera."[1] Agents determined that "Rivera" had been arrested on September 15, 2006 after a Massachusetts State Trooper observed "Rivera" engage in a hand-to-hand drug sale with a buyer. Troopers seized cocaine from the buyer and arrested "Rivera" in possession of 42 twists of cocaine and 4 bags of heroin. Based on this arrest, "Rivera" was charged with trafficking in cocaine within a school zone in Middlesex Superior Court. "Rivera" defaulted on the Middlesex case in 2010; the default warrant for that case remains outstanding.

8. Based on my review of photographs from the 2006 arrest of "Rivera," the contemporaneous RMV photograph for "Rivera," the RMV photograph for "Vasquez," and

---

[1] Agents also located another Massachusetts driver's license bearing BAEZ's photograph issued under the name "Eduardo Vasquez."

BAEZ's arrest photograph from May 13, 2019, I believe that BAEZ is "Rivera," the person who defaulted on the Middlesex Superior Court cocaine trafficking case.

9.  Interceptions from BAEZ's and GUERRERO's cellular telephones revealed that both men worked together to distribute different types of controlled substances, including cocaine, often using coded language. These interceptions, led agents to believe that GUERRERO worked closely with BAEZ and that they often picked up and distributed narcotics for their drug trafficking cell from a stash house. On March 20, 2019, agents intercepted a call between BAEZ and GUERRERO during which they made arrangements to meet at the "ranch." During that call, GUERRERO told BAEZ to take out only "10." At the time of this call, precise location information from BAEZ's cell phone placed the phone in the vicinity of Planet Fitness, a gym located on Neponset Avenue in Dorchester.[2] A short time later, agents surveilled BAEZ in his blue 2007 Honda Odyssey van and observed him pull the van over in front of 23 Mt. Ida Road in the Bowdoin Street – Geneva Avenue section of Dorchester. Three minutes later, agents observed GUERRERO, driving a green Toyota Camry, pull over on Potosi Street near 23 Mt. Ida Road. Agents intercepted a call from BAEZ to GUERRERO, during which BAEZ told GUERRERO to "come on up." Agents observed GUERRERO walk toward 23 Mt. Ida Road. Approximately forty-five minutes later, agents observed BAEZ and GUERRERO exit 23 Mt. Ida Road. BAEZ looked up and down Mount Ida Road, entered his van, and drove off, and GUERRERO left a short time later.

---

[2] Agents intercepted numerous calls where BAEZ mentioned that he was at the gym, and agents regularly used physical surveillance and precise location information from BAEZ's cell phone to place BAEZ at that location.

10. On March 26, 2019, agents installed a stationary pole camera in the vicinity of 23 Mt. Ida Road. Using the pole camera, agents watched BAEZ and GUERRERO and others enter and exit the Mt. Ida stash house after speaking in code about picking up or delivering narcotics during intercepted calls on a near-daily basis.

11. For example, on March 31, 2019, agents intercepted a series of calls between BAEZ and GUERRERO discussing a drug-related meeting that would take place the next day. At approximately 2:00 p.m., telephone records indicated that a suspected drug buyer contacted GUERRERO. A short time later, GUERRERO called BAEZ. During that call, GUERRERO stated: "It's going to rain tomorrow around 11 or 12. What time do you want it to rain?" GUERRERO went on to tell BAEZ, "I'll bring you thirty-eight *cheles* . . . add it up and see." The call continued:

| | |
|---|---|
| BAEZ: | I didn't know that you . . . I didn't know that you wanted 38 more. I thought it was [unintelligible]. |
| GUERRERO: | Huh? |
| BAEZ: | [unintelligible] 38. It was 38, but I thought you were not going to pay for what you are bringing. |
| GUERRERO: | With the beer. With the beer. |
| BAEZ: | Yeah I know. Now I understand. It's with the other one. |

12. The men continued to speak in code about the meeting. BAEZ instructed GUERRERO, "One thousand five hundred twenty," and GUERRERO responded, "38 times – how much do I have to, uhh . . .", and BAEZ said again, "One thousand five hundred twenty." GUERRERO then said, "I am going to deduct the hundred *cheles*, all right," and BAEZ replied "Yes, that's fine." In this call, I believe that "38" refers to the amount of drugs BAEZ and GUERRERO planned to sell to the buyer, and "one thousand five

hundred twenty" means $1,520 in U.S. currency, or the amount of money BAEZ and GUERRERO intended to charge the buyer for the drugs.

13. On April 1, 2019, agents set up surveillance near GUERRERO's home at 88 Crawford Street in Dorchester. Agents saw that GUERRERO and the suspected drug buyer were in regular phone contact throughout the morning. Agents followed GUERRERO as he drove through Boston in his Honda Pilot. At 11:28 a.m., GUERRERO called BAEZ:

> BAEZ: Are you already there?
>
> GUERRERO: No, I'm going over there now. I was waiting on this guy. I'm going to get the car now, I'm in the SUV.
>
> BAEZ: Oh!
>
> GUERRERO: I'll be there like in twenty minutes.

14. Agents observed GUERRERO stopped on Franklin Hill Avenue and also saw the suspected drug buyer carrying a black backpack entering the front passenger seat of GUERRERO's Honda Pilot. GUERRERO traveled approximately 50 feet and the suspected drug buyer got out of the Honda Pilot and began walking back down Franklin Hill Avenue. Agents noted that the suspected drug buyer no longer had the black bag and recognized this as a "meaningless ride," a method commonly used by drug traffickers to conduct a drug transaction with buyers out of the public eye.

15. Agents followed the suspected drug buyer to his apartment and followed GUERRERO back to his home at CRAWFORD STREET. Once there, GUERRERO switched cars and drove his Toyota Camry to the area of the Mt. Ida stash house. Using the pole camera, agents observed GUERRERO enter the stash house at 11:57 a.m. Three

minutes later, at 12:00 p.m., agents observed BAEZ leave Mt. Ida, enter his blue Honda Odyssey, and drive to another drug deal (during one of their calls, BAEZ informed GUERRERO he was going to meet "Mijo," and agents observed BAEZ meet with another individual and engage in a quick meeting that appeared to be a drug transaction after he left the stash house).

## THE ONE-KILOGRAM COCAINE SEIZURE

16. Recently intercepted calls on BAEZ and GUERRERO's cell phones indicated that their drug cell was looking to be re-supplied. On May 13, 2019, agents intercepted calls between BAEZ and Cesar RODRIGUEZ-SANQUENTIN, a suspected runner for a drug trafficking organization operating in the Methuen-Lawrence area. On December 17, 2018, a trooper with the Massachusetts State Police pulled RODRIGUEZ-SANQUENTIN's Honda Accord over for a traffic violation. During the stop, RODRIGUEZ-SANQUENTIN showed the trooper his cell phone with what appeared to be a photograph of a foreign driver's license. When the trooper asked to see the phone, RODRIGUEZ-SANQUENTIN locked the phone and handed it to him. The trooper asked RODRIGUEZ-SANQUENTIN if he had a license and he replied no. He advised the trooper he had been living in Massachusetts for seven years by holding up seven fingers. The trooper determined that RODRIGUEZ-SANQUENTIN had an outstanding warrant from the Malden District Court for forged Registry of Motor Vehicle documents. The trooper placed RODRIGUEZ-SANQUENTIN in handcuffs and put him in the back of the trooper's cruiser. An inventory search of RODRIGUEZ-SANQUENTIN's Honda Accord revealed a Kellogg's Corn Flakes box containing $33,611 in U.S. currency. When asked about the money, RODRIGUEZ-SANQUENTIN replied, "My amigo." RODRIGUEZ-SANQUENTIN was

transported to answer to the default warrant from the Malden District Court. That case remains open and is currently set for a jury trial on June 27, 2019.

17. On May 13, 2019, agents intercepted a call between BAEZ and RODRIGUEZ-SANQUENTIN. During the call, RODRIGUEZ-SANQUENTIN told BAEZ, "There is a half of something around. Grade A. I will see you with the three. They're giving it to me with the two so I can give it with the three, you know what I mean? I'm going to pick up one. I called you first to see if you wanted half before I called someone else." Based on my training and experience, I believed that RODRIGUEZ-SANQUENTIN was in possession of a kilogram of narcotics (later determined to be cocaine) and he was dividing the kilogram between three distributors, one of which was BAEZ. Before he completed the call, RODRIGUEZ-SANQUENTIN said, "Let me call the guy, my brother, to see if we can go up now. If anything I will bring it up there and we'll divide it there." RODRIGUEZ-SANQUENTIN told BAEZ, "I am coming with my wife and my little girl. I'm going to take advantage because I'm not driving, you know what I mean?" Based on my training and experience, I believe that RODRIGUEZ-SANQUENTIN informed BAEZ that his wife or girlfriend would be driving his car which, he believed, would arouse less attention from law enforcement.

18. Agents began to conduct surveillance on RODRIGUEZ-SANQUENTIN at an apartment complex at 71 Mystic Street in Methuen, Massachusetts, where agents believed he lived. Agents observed RODRIGUEZ-SANQUENTIN's Honda Accord (the same vehicle RODRIGUEZ-SANQUENTIN was driving when he was stopped with the cash in the cereal box) parked at the residence. Agents observed RODRIGUEZ-SANQUENTIN walk out of the Mystic Street residence carrying a bag. He placed the bag

in the engine compartment of the Honda. The female and a small child entered the vehicle. The female sat down in the driver's seat. RODRIGUEZ-SANQUENTIN sat in the front passenger seat.

19. Agents requested that a marked Massachusetts State Police cruiser conduct a stop of the Honda on Morrissey Boulevard in Dorchester. As the Honda was being pulled over, agents intercepted a call from RODRIGUEZ-SANQUENTIN's cell phone to BAEZ: "They have me stopped here at the beach." BAEZ responded, "Really?" RODRIGUEZ-SANQUENTIN replied, "You already know, I'm with my wife." BAEZ responded, "They are always there."

20. Agents recovered one kilogram of suspected cocaine wrapped in black tape inside a Christmas bag from the engine compartment of the Honda Accord. A field test on the substance was positive for the presence of cocaine. Agents recovered a cell phone from RODRIGUEZ-SANQUENTIN. When they dialed the number BAEZ had been in contact with to purchase cocaine that day, RODRIGUEZ-SANQUENTIN's cell phone rang.

21. From location information from BAEZ's cell phone and data from the GPS device on BAEZ's Honda Odyssey minivan, agents knew that BAEZ was at the Mt. Ida stash house when he spoke to RODRIGUEZ-SANQUENTIN. After this call, agents in the vicinity of the stash house saw BAEZ leave the stash house, get into his Honda Odyssey, and drove to Morrissey Boulevard where RODRIGUEZ-SANQUENTIN was stopped. BAEZ then drove back to the stash house. During this time, BAEZ made several calls indicating that his supplier had been stopped and that he needed to clean out his stash house. Agents then observed BAEZ leaving the stash house carrying a large black trash bag. He got back into his Honda Odyssey and drove off. Agents requested that a marked Boston

Police cruiser stop BAEZ in the area of Townsend Street in Roxbury, near Blue Hill Avenue, and placed him in custody. The black plastic bag was located on the floor in front of the front passenger seat. Inside the bag was a digital scale, a cellular telephone, clear plastic baggies commonly used to package drugs for street level sale, and a large wooden box with a padlock.

22. Agents moved quickly to arrest the Targets. During booking, BAEZ advised agents that his name was "Ariel Maldonado," that he was born in Puerto Rico, and produced a Pennsylvania driver's license with his photograph. RODRIGUEZ-SANQUENTIN produced a Dominican identification card in the name of "Carlos Rodriguez." After agents arrested the Targets, agents applied for and executed a series of search warrants. Agents seized $45,200 in U.S. currency from BAEZ's home at 37 Williams Street, Apartment N, in Roxbury. From BAEZ's wooden box, agents seized $15,450 in U.S. currency, three green plastic twists of a white powdery substance that agents suspect to be fentanyl (a field test on the substance was inconclusive, which is not unusual when field-testing fentanyl), and another plastic bag containing suspected narcotics residue. Agents seized $7,800 in U.S. currency from GUERRERO's Crawford Street home.

CONCLUSION

For the foregoing reasons, I respectfully request that the Court issue the requested criminal complaint, charging the Targets with conspiracy to distribute and possess with intent to distribute cocaine. I further request that the Targets be detained pending trial.

Signed under the pains and penalties of perjury this 14th day of May 2019.

_____
Jason Abramoski
Task Force Officer
Homeland Security Investigations

Sworn to and subscribed before me this 14th day of May 2019.

_____
The Honorable Marianne B. Bowler
United States Magistrate Judge